UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AGUSTIN JESUS NEVAREZ,

    Petitioner,

    v.

BRENDA CASH, Warden,

    Respondent.
_____/

No. C 11-0974 PJH

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

    Before the court is the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by state prisoner, Agustin Jesus Nevarez ("Nevarez"). Having reviewed the parties' papers, the record, and having carefully considered their arguments and the relevant legal authorities, the court DENIES the petition.

## BACKGROUND

### A.    Procedural Background

    On December 19, 2007, a Santa Clara County jury convicted Nevarez of two counts of lewd and lascivious acts upon a child by force, violence, duress, menace, or fear under California Penal Code § 288(b)(1), and two counts of sexual penetration by a foreign or unknown object by force, violence, duress, menace, or fear under California Penal Code § 289(a)(1). The jury also found true the special allegations that Nevarez kidnaped a victim, and that he committed the offenses against multiple victims under California Penal Code §§ 667.61(a) and (e). On January 25, 2008, the court sentenced Nevarez to forty years to life in prison.

    Nevarez subsequently filed a direct appeal with the state appellate courts. On

September 9, 2009, the California Court of Appeal affirmed his conviction, and on December 2, 2009, the California Supreme Court denied review. Nevarez filed the instant federal habeas petition on March 2, 2011.

### B.     Factual Background

The crimes for which Nevarez was convicted were committed against his younger cousin, A., and his niece, Y., who were seven and/or eight years-old at the time.

*Crimes Against A.*

Nevarez was charged with and convicted of one count of lascivious acts upon a child and one count of sexual penetration as to A. for acts that took place in August 1999, when Nevarez was eighteen years-old.

A. was sixteen years-old at trial and testified that she had an older cousin, Y. In September 2006, Y. revealed to A. that Nevarez had raped her when she was a child. A. reported that Nevarez had done the same thing to her. A. testified that in 1999, when she was eight years-old, she was at a park where her father was playing basketball. A. sat on her cousin Nevarez's lap while he rubbed her back. A. remembered needing to use the bathroom, and she called to her father, who was on the basketball court, that she needed to go to the restroom. Even though A.'s father said he would take her, Nevarez volunteered to take A. to the bathroom.

It was already dark outside at the time. Instead of taking A. to the bathroom, though, Nevarez took A. over to the top of some empty bleachers on a baseball field. He had A. lie down, and began touching her outside of her clothing. Neveraz then pulled her pants and underwear down, touched her legs, and then got on top of her and pulled down her pants and put his finger in her vagina, and also attempted to put his penis in her vagina.

A. testified that she did not recall being hurt, but that it did not feel good. She attested that Nevarez was too heavy for her to stop him, and that she did not want him on top of her and touching her. A. saw someone walking toward them in the park, and Nevarez pulled up her pants.

When she returned home, A. observed blood on her underwear. Her mother believed she was beginning to menstruate. A. did not tell her parents about what Nevarez had done to her because she was afraid. She testified that she did not know about sexual intercourse at the time, and did not realize until later that Nevarez had raped her.

A. also testified that prior to incident in the park, Nevarez came over to her home while her parents were out and another cousin was babysitting. She attested that her cousin left her alone in her mother's room with Nevarez, and that Nevarez took her pants off and she felt a stabbing inside her vagina. A.'s aunt came in, observed the scene, and said she was going to tell A.'s father, but A. was not sure whether she had done so.

*Crimes Against Y.*

Y. was seventeen years-old at the time she testified at trial. She testified that sometime between August 1, 1998, and June 30, 1999, when she was seven or eight years-old, she was sleeping on the couch in her living room and was awakened when her uncle, Nevarez, tried to get on top of her. He had taken off his underwear, and touched Y.'s chest and vagina. He then inserted his penis in her vagina. Y. attested that she did not know what was happening, but that it hurt. Y. testified that when Nevarez stopped, he picked up a paper towel and wiped off his penis.

The next morning, Y. testified that she had a "burning" feeling and that it hurt to urinate. She did not learn about sexual intercourse until the seventh grade.

*Prosecution Case*

In addition to A. and Y., Sunnyvale Police Detective Simmons, testified for the prosecution regarding the investigation of Nevarez. On October 19, 2006, Detective Simmons arranged a recorded pretextual telephone call between Y. and Nevarez in which Y. attempted to get Nevarez to discuss the incident.

The call, which was in Spanish, was played for the jury with the assistance of an interpreter. The tape and transcript of the call were admitted into evidence. During the call, Nevarez admitted that he "tried to have sex with [A.]," and stated that he was thirteen

years-old at the time.

Detective Simmons also testified that he was familiar with the park where Nevarez raped A. He attested that the baseball bleachers in the park are in one piece, and wrap around home plate. He asserted that it would be difficult to see anyone on the bleachers at night.

Additionally, Carl Lewis, a criminal investigator with the District Attorney's Physical Abuse of Children ("PACE") unit, testified generally regarding child sexual abuse accommodation syndrome.

*Defense Case*

Nevarez admitted to sexually assaulting both A. and Y., but claimed that the sexual assaults occurred in 1993 or 1994, when he was thirteen or fourteen years-old as opposed to 1998 or 1999, when he was eighteen or nineteen years-old.

Nevarez testified that he came to California from Mexico in 1993 at age thirteen, and that he was staying at his brother's house (Y.'s father) one night when he touched Y. and put his penis in her vagina. Nevarez admitted that he did not believe Y. wanted to have sex with him, and that he did not ask her permission. He also admitted that he was physically stronger than Y., that he believed he held Y. down with his arms, and that Y. began crying and told him "no."

Nevarez also admitted that the park incident with A. occurred as she described, but testified that it happened shortly after the incident with Y. in 1993 or 1994, and not in 1998. He testified that he intentionally took A. to the bleachers at the baseball field because he did not want anyone, including A.'s father, to see them. Nevarez testified that he first put his finger in A.'s vagina, and she began to cry. He then attempted to put his erect penis in her vagina, but she continued crying, and Nevarez realized that what he was doing "was wrong," and stopped.

In support of his testimony regarding the timing of the incidents, Nevarez's ex-girlfriend, Adriana Espinoza, testified. Espinoza testified that she gave birth to Nevarez's

son when she was fifteen years-old in 1999, and that she began dating him sometime the year before when she was fourteen. She testified that commencing with the beginning of 1999, and for a period of "some months" until Espinoza became dissatisfied and moved out, Neveraz spent every night with her and the baby.

*Closing Arguments*

During closing arguments, Nevarez's counsel reiterated his defense: that Nevarez committed the crimes when he was approximately thirteen years-old and after he had just arrived in California from Mexico.

The prosecution countered during its argument that if that had been the case, the victims would have been approximately three years-old at that time and would not have been able to remember the detail in which they described the incidents. The prosecution then argued that the victims had no reason to lie regarding the timing.

**ISSUES**

Nevarez raises the following three claims:

(1) his Fourteenth Amendment due process rights were violated because there was insufficient evidence that one of the victims, A., accompanied Nevarez "against her will," a necessary element of kidnaping under California law;

(2) that his Fourteenth Amendment due process rights were violated because there was insufficient evidence that he forcibly sexually penetrated either of the two victims; and

(3) that his Fourteenth Amendment due process rights were violated when the prosecutor misstated and invented evidence during his closing argument.

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407–09, (2000), while the second prong applies to decisions based on factual determinations, *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412–13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "[E]valuating whether a rule application [i]s unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.*  "As a condition for obtaining habeas corpus [relief] from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

6

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El*, 537 U.S. at 340. Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Harrington v. Richter*, 131 S.Ct. 770, 784–85 (2011). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801–06 (1991).

## DISCUSSION

**I.    Sufficiency of the Evidence re: Kidnaping**

Nevarez contends that his due process rights were violated because the evidence was insufficient to support the special allegation that he kidnaped A., asserting that there was no evidence that he forced A. to the bleachers in the park against her will.

The California Court of Appeal rejected Nevarez's claim, noting that California Penal Code § 667.61, also referred to as the "One Strike Law," which governed the kidnaping special allegation

> sets forth an alternative and harsher sentencing scheme for certain enumerated sex crimes perpetrated by force, including rape. 'The purpose of the One Strike law is to ensure [that] serious and dangerous sex offenders . . . receive lengthy prison sentences upon their first conviction . . . where the nature or method of the sex offense place[d] the victim in a position of elevated vulnerability. The One-Strike law prescribes indeterminate sentences of 15 or 25 years to life for enumerated sex offenses, including violations of section 288, subdivision (b) and section 289, subdivision (a), the two crimes of which defendant was convicted in this case, when the crimes have been 'committed under one or more aggravating circumstances, such as . . . kidnap[ing of] the victim. . . . '

(Citations omitted).

The state court further noted that § 667.61 refers to California Penal Code § 207 for

the definition of kidnaping. That statute provides that a person commits a kidnaping in violation of § 207(b) when "for the purpose of committing any act defined in Section 288," the person "hires, persuades, entices, decoys, or seduces by false promises, misrepresentations, or the like, any child under the age of 14 years to go out of this country, state, or county, or into another part of the same county." The California Court of Appeal further noted that the trial court had instructed the jury in accordance with § 207(b), and that Nevarez had not objected to the instruction.[1]

The state court rejected Nevarez's argument that § 207(b) required proof that he used force or fear to move A. Instead, the court noted that the prosecution need only show that Nevarez "persuaded or enticed A. to follow him by a false promise or misrepresentation, with the intent to commit a lewd act upon her." The California Court of Appeal subsequently held that there was sufficient evidence, noting that:

> A. told her father that she needed to go to the restroom and [Nevarez] interjected that he would take her there, implicitly promising to bring her back safely. One may infer from A.'s age, and from her announcing to her father her need to use to use the restroom, that A.'s father did not expect her to walk around the park in the dark by herself. Thus, it is reasonable to conclude that [Nevarez] persuaded A. to follow him away from the basketball courts and out of sight of her father by falsely leading her to believe that he would escort her safely to the bathroom. That [Nevarez] led her away with the intent to commit a lewd act is established by the fact that A. had just been sitting on his lap while he rubbed her back and from [Nevarez's] testimony that he chose the bleachers location so that A.'s father would not see what he was about to do.

Here, Nevarez makes identical arguments before this court as those he made before the California appellate court. Without acknowledging the state court's holding in this case that California law does not require proof that he used force or fear to move A. - or the deference this court is required by AEDPA to afford that decision - he again argues that the

---

[1] The trial court instructed the jury, in pertinent part, that in order to find that Nevarez had kidnaped A., it had to find that he had:

> persuaded, enticed, decoyed, or seduced by false promises or misrepresentations a child younger than 14 years old to go somewhere. [¶] And number two, when the defendant did so, he intended to commit a lewd or lascivious act on a child. [¶] And three, as a result of the defendant's conduct, the child then moved or was moved a substantial distance.

prosecution was required to show that A. accompanied Nevarez "against her will" or by force, and that there was no such evidence that was the case.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, which, if proven, entitles him to federal habeas relief. *See Jackson*, 443 at 321, 324.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt has there been a due process violation. *Jackson*, 443 U.S. at 324.

A federal habeas court applies the standards of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* to the facts of the case. *Id.* at 1275 (quoting 28 U.S.C. § 2254(d)). Thus, if the state court affirms a conviction under *Jackson*, the federal court must apply § 2254(d)(1) and decide whether the state court's application of *Jackson* was objectively unreasonable. *See McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010). To grant relief, therefore, a federal habeas court must conclude that "the state court's determination that a rational jury could have found that there was sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable doubt, was

objectively unreasonable." *Boyer v. Belleque*, 659 F.3d 957, 965 (9th Cir. 2011).

Moreover, the *Jackson* standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16; *see, e.g., Boyer*, 659 F.3d at 967-68 (concluding it was not unreasonable, in light of Oregon case law, for Oregon court to conclude that a rational jury could find beyond a reasonable doubt that petitioner intended to kill his victim based on proof that he anally penetrated several victims with knowledge that he could infect them with AIDS).

Nevarez's arguments on this issue amount to little more than an assertion that the state courts erred regarding their interpretation of California law. The Supreme Court has repeatedly held that federal habeas relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861-62 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Peltier v. Wright*, 15 F.3d 860, 861-62 (9th Cir. 1994); *see, e.g., Little v. Crawford*, 449 F.3d 1075, 1082 (9th Cir. 2006) (claim that state supreme court misapplied state law or departed from its earlier decisions does not provide a ground for habeas relief). Federal courts generally are bound by a state court's construction of state laws, except when it appears that its interpretation is an obvious subterfuge to evade the consideration of a federal issue. *See Melugin v. Hames*, 38 F.3d 1478, 1487 (9th Cir. 1994) (federal court bound by Alaska Court of Appeals' interpretation and decision that state statute was properly applied to petitioner's conduct).

Here, there has been no such subterfuge, and Nevarez has failed entirely to demonstrate that the California Court of Appeal's reasoned opinion resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

For these reasons, this claim fails.

10

**II.     Sufficiency of Evidence re: Forcible Sexual Penetration**

Next, Nevarez argues that there was insufficient evidence that he used force to sexually penetrate A. or Y.  He contends that it was not sufficient simply that he was larger and heavier than A. and Y., and further argues that there was insufficient evidence that A. and Y. objected to the intercourse.

The California Court of Appeal rejected Nevarez's arguments, noting that under California Penal Code § 289(a)(1), it is a crime to commit an act of sexual penetration when the "the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury."  The court further noted that under California law:

> The definition of the word 'force' in sexual offense statutes depends on the offense involved, . . . . [and] the requisite amount of force for a rape conviction is the amount sufficient to overcome the victim's will. This level of force also applies for convictions of aggravated sexual assault of a child by rape and by forcible oral copulation.

(Citations omitted.)  Additionally, it held that "forcible sexual penetration, within the meaning of section 289, subdivision (a)(1), like the crimes of forcible oral copulation and rape, requires evidence that the defendant accomplished an act of sexual penetration by the use of force sufficient to overcome the victim's will."  (Citations omitted.)

The state appellate court then found substantial evidence of force to overcome the will of both A. and Y., reasoning:

> As to Y., defendant did not believe she wanted to have sexual intercourse with him. Nevertheless, he held her arms down and lay on top of her, preventing her from moving out from under him while he penetrated her vagina with enough force that she suffered a burning sensation while urinating that lasted through the following day. This is sufficient evidence that defendant forced Y. to submit to the act against her will.
>
> A. did not consent to the acts defendant performed and cried when defendant put his finger in her vagina. In spite of that, he went ahead and penetrated her with his erect penis. A. could not move out from under him and later found blood stains on her panties. This, too, is sufficient to show that defendant held A. by force, against her will, while he forcibly penetrated her vagina.

Again, Nevarez makes the same arguments that he made before the state court,

11

and the legal standards are the same as those set forth above with respect to the first claim.  Here, the record does not even appear to support any conflicting inferences regarding Nevarez's use of force as defined by state law.  However, if the court were to assume that the record supported conflicting inferences, it must nevertheless "presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.  The court may not substitute its judgment for that of the jury.  *See Cavazos v. Smith*, 132 S.Ct. 2, 3-4 (2011) (finding Ninth Circuit erred by substituting its judgment for that of California jury on the question whether the prosecution's or defense's expert witnesses more persuasively explained the cause of death).  Considering all of the evidence admitted at trial in a light most favorable to the prosecution as it is required to do, *see McDaniel v. Brown*, 130 S. Ct. at 673-74 (2010), the court concludes that the California Court of Appeal's reasoned decision on this claim was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

### III.     Prosecution's Closing Argument

During the prosecution's closing argument, it referred to Nevarez's ex-girlfriend, Espinoza's testimony, arguing as follows:

> Essentially [Espinoza] hooks up with [Nevarez] when she's 14, which I don't know, I don't know what that tells you about his preferences in age of girls. Obviously start having sexual relations. . . Their relationship was not a great relationship. And it leads you to believe that perhaps one of these nights when he's had too much to drink and he decides to sleep at [his brother's] house . . . when things aren't going so great with [Espinoza], who apparently is - her mothering skills may not be the best when she doesn't want to have anything to do with the baby, and he decided that he wants something, he's going to act out. He's probably not getting it from her. And when she comes in and testifies, you need to take everything she says with a grain of salt, because once again, his sister, his family holds probably the greatest chip that they can, they hold her son. They have control whether or not she gets to go see the kid.

Nevarez objected to the testimony as improper argument and for assuming facts not in evidence.  The trial court overruled the objection, finding that counsel could argue bias

12

and motive, but the prosecutor nevertheless abandoned the topic.

Nevarez contended before the state appellate court that the prosecution committed misconduct by arguing that he raped Y. because he was having marital problems and was probably not having sex with Espinoza when there was no such evidence in the record. The California Court of Appeal denied his claim under state and federal law, concluding that:

> Although there was no direct evidence that [Nevarez] was being denied sexual contact with Espinoza at the time he assaulted Y., Espinoza did state that her relationship with [Nevarez] had deteriorated after their baby was born in February 1999, suggesting that their intimate relationship may have been suffering, as well. Thus, the comment that [Nevarez] was 'probably not getting it from her' was [a] fair comment on the evidence.

Nevarez reiterates his arguments before the state appellate court and contends that the California Court of Appeal's rejection of his arguments was an unreasonable application of United States Supreme Court case law.

On a petition for a writ of habeas corpus, the standard of review for a claim of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether the prosecutor's misleading or deceptive conduct or language "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*  In *Darden*, the Supreme Court relied on six factors in evaluating a due process claim arising from a prosecutor's inappropriate comments during closing argument: 1) whether the prosecutor manipulated or misstated the evidence; 2) whether the comments implicated other rights of the accused; 3) whether the comments were invited; 4) whether instructions eliminated or reduced the harm; 5) whether the evidence against the defendant was strong; and 6) whether there was an opportunity to rebut the comments. *Id.* at 181–82.

The court agrees with the California Court of Appeal's characterization of the prosecution's comments and the evidence.  Although Espinoza did not testify that she was

13

no longer having sexual intercourse with Nevarez, given her testimony that the relationship had deteriorated, this was not an impermissible inference to be drawn from the testimony. Additionally, given Nevarez's, Espinoza's, and the victims' respective ages, the age-related comments also were not improper.  Accordingly, the state appellate court's determination was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Moreover, even if any of the challenged comments could be construed as improper, they did not infect the trial with unfairness such that Nevarez's due process rights were violated.  First, the prosecution's comments were not farfetched, and Nevarez's introduction of Espinoza's testimony regarding the deteriorating state of her relationship with him, along with her testimony regarding the timing of that relationship, invited such comments. Furthermore, the evidence against Nevarez was strong, if not overwhelming. He conceded having committed the conduct, and the only issue was the timing of the sexual assaults and rapes.  For these reasons, the California Court of Appeal's reasoned decision on this claim was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

## CONCLUSION

For the foregoing reasons, Nevarez's petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

## CERTIFICATE OF APPEALABILITY

To obtain a COA, Nevarez must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward.  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard.  Here, the court finds that none of

the issues presented by Nevarez in his petition meet the above standard and accordingly DENIES the COA.  *See generally Miller-El*, 537 U.S. at 322.

**IT IS SO ORDERED.**

Dated: June 18, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge